FULMER, Judge.
 

 Shadeed Wright pleaded guilty to four drug charges
 
 [1]
 
 reserving the right to appeal the denial of his dispositive motion to suppress evidence. We reverse and remand for the trial court to grant the motion to suppress because the evidence presented did not support the trial court’s finding of exigent circumstances justifying the warrantless entry into Wright’s motel room.
 

 Three officers testified at the suppression hearing. Sergeant Townsend testified that he responded to Manatee Memorial Hospital in reference to an alleged aggravated battery of a young woman. He observed that the victim’s right eye was bloodshot, her right cheek was swollen, and there was redness on her face and dark spotting above the eye. She was on a fetal monitor because she was twenty-four weeks pregnant. After learning the facts of the domestic battery, the sergeant responded to the Motel 6 on State Road 64 where the suspect, Wright, was staying. Sergeant Townsend checked with the front desk clerk and verified that Wright was a guest and was lawfully in the room. A call placed to the room by the motel clerk was answered by a male occupant. The sergeant had been told that there was a possibility that Wright was armed. Some ammunition was discovered in the apartment that Wright had visited earlier in the day where the alleged battery had occurred. Sergeant Townsend was of the opinion that he was dealing with a possibly violent individual.
 

 Sergeant Townsend directed other officers to obtain a key to the room. He made the decision to utilize the key to open the door enough to identify if Wright was the occupant of the room. He decided not to get a warrant because he was concerned that the victim could be in danger of additional violence if Wright were to somehow get away from the officers observing the room. He was also concerned for the safety of officers standing outside the motel because of the possibility that Wright was armed.
 

 It was close to midnight when the door was opened. Sergeant Townsend was not present at the door when it was opened. He was fifty feet away, viewing what was going on. There were four officers outside the door in a tactical formation called a “guns forward line,” meaning that all angles of the site are covered by weapons
 
 *411
 
 drawn, when the door was opened by Deputy Lindauer. In addition there were two unmarked plain clothes units watching the motel room.
 

 Deputy Warner testified that he was the initial deputy dispatched to Manatee Memorial Hospital. Based on the nature of the dispatch, he thought it would be a good training call for a recruit deputy, so he asked for a training unit and they responded and took over the investigation. The recruit was Deputy Richards and his field training officer was Deputy Lindauer. Deputy Warner collaborated with Deputy Lindauer and went to the Motel 6. He explained that there were units in the back of the motel watching the room to make sure no one entered or left while the investigation was being conducted. Deputy Warner obtained the key card from the desk clerk and turned the card over to Deputy Lindauer. Deputy Lindauer keyed the door. Deputy Warner was the first person in the stack at the doorway. There were approximately six law enforcement officers outside the motel room. The door only opened four inches. It had a metal beam lock which only allowed it to open that far. Deputy Warner looked in with his flashlight and saw Wright lying on the bed. Wright jumped up. Deputy Warner ordered Wright to show his hands. Wright complied. Deputy Warner then ordered him to come to the door and open the door. Wright complied, and he was taken into custody and brought out of the room. The deputies went in and cleared the room for safety purposes. Wright asked for shoes and clothing. Deputy Warner picked up the shoes in the room and when he lifted the flap of the shoe, a plastic baggie fell out, which contained crack cocaine.
 

 Deputy Lindauer testified that he was training Deputy Richards and the call was more appropriate for a training call, so they took it and interviewed the victim at the hospital. The victim related that Wright had battered her. He had stomped her in the face. She was pregnant and she was in the maternity area being monitored. She advised that Wright was staying at the Motel 6 and that he owns and sometimes carries a firearm. The deputies then went to the victim’s apartment and observed damage to the bathroom door. The victim’s mother, who was at the apartment, gave the deputies a bag of bullets and asked if they would take it because the victim did not own a gun. The deputies then coordinated with several units and with Sergeant Townsend and responded to the Motel 6. Immediately when the door was opened, many officers were commanding Wright to come out and put his hands up and saying he was under arrest. After Wright came to the door and surrendered, he was standing in his underwear in handcuffs, and he asked to get dressed. Deputy Lindauer testified that the call took two-and-a-half hours from the time he left the hospital to the time he got to the motel room. The parties stipulated that the contraband was found in the room after the arrest.
 

 On appeal, Wright argues that although the officers had the authority to arrest him for battering his pregnant girlfriend, they did not have the authority to break into the room to execute what was a routine felony arrest. He argues that there were no exigent circumstances to justify the police entering the motel room in the middle of the night. The State responds that the police had probable cause to arrest Wright and sufficient exigent circumstances existed to justify the warrantless entry into the motel room. The State cites specifically police concerns for officer safety and the reasonable belief that the victim’s life was in danger.
 

 
 *412
 
 It is not disputed that the motel room is considered a private dwelling for Fourth Amendment purposes because Wright was legally there, had apparently paid for the room, and had not been asked to leave.
 
 See Holloman v. State,
 
 959 So.2d 408, 406 (Fla. 2d DCA 2007);
 
 Lee v. State,
 
 856 So.2d 1133, 1136 (Fla. 1st DCA 2003). It is also agreed that the State was required to show exigent circumstances to justify the warrantless entry. “ ‘Absent consent, a search warrant, or an arrest warrant, a police officer may enter a private home only when there are exigent circumstances for the entry.’ ”
 
 Holloman,
 
 959 So.2d at 406 (quoting
 
 Tillman v. State,
 
 934 So.2d 1263, 1272 (Fla.2006)). “[T]he reasonableness of an entry by police onto private property without a warrant depends on the totality of the circumstances.”
 
 Lee,
 
 856 So.2d at 1136 (citing
 
 Davis v. State,
 
 834 So.2d 322, 327 (Fla. 5th DCA 2003)).
 

 The trial court’s conclusion that exigent circumstances existed in this case is summed up in its order, as follows: “Inside the motel room was what law enforcement believed was a violent, likely armed suspect of an aggravated battery. Had he exited the room to attempt to make contact with the victim again or for any purpose, a potentially violent confrontation could certainly ensue.” The trial court relied on
 
 United States v. Standridge,
 
 810 F.2d 1034 (11th Cir.1987), in which the court found exigent circumstances to enter a hotel room without a warrant to arrest a suspect of an armed bank robbery.
 

 We conclude that the totality of the circumstances did not preclude the officers from taking the time necessary to secure a warrant. There were at least five officers at the motel and another two plain clothes units were monitoring the parking area. There is no indication that Wright was aware of the police presence outside of the motel.
 
 See United States v. Santa,
 
 236 F.3d 662, 669-70 (11th Cir.2000) (“It is well settled that ‘[circumstances are not normally considered exigent where the suspects are unaware of police surveillance.’ ”) (quoting
 
 United States v. Tobin,
 
 923 F.2d 1506, 1511 (11th Cir.1991)). Any fear that it would not have been possible to control Wright had he attempted to leave the room was not reasonable given that Wright was so outnumbered and did not know that the officers were outside.
 
 See Lee,
 
 856 So.2d at 1137.
 

 Because the State did not show that there was insufficient time to secure a warrant before the officers opened the door and ordered Wright out of the room to effectuate his arrest, the trial court should have suppressed the evidence found as a result of the arrest. Thus, we reverse the denial of the motion to suppress, and remand for the trial court to enter an order granting the motion, which will entitle Wright to discharge.
 

 Reversed and remanded with directions.
 

 NORTHCUTT, C.J., and KHOUZAM, J., Concur.
 

 [1]
 

 . The charges are possession of cocaine with intent to sell, possession of a controlled substance (hydrocodone), possession of cannabis, and possession of paraphernalia.